[No. G035836. Fourth Dist., Div. Three. Apr. 28, 2006.]

GENE MORAN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

689

## Counsel

Gene Moran, in pro. per., for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Silvia M. Diaz and Dana T. Cartozian, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**BEDSWORTH, Acting P. J.**—Gene Moran appeals from a judgment that denied his petition for a writ of mandate to compel the California Department of Motor Vehicles (DMV) to renew the registration of his vehicle without a salvage certificate. He argues the controlling statute is unconstitutional because it does not provide for an administrative hearing at which a motorist can contest the salvage designation. We conclude the writ does not lie and affirm.

Moran's vehicle was damaged while parked.[1] He filed a claim with his insurer, Esurance Insurance Company, Inc. (Esurance), and was told to take the vehicle to a body shop in Garden Grove for an estimate. Shortly thereafter, Esurance advised Moran the cost of repair ($6,627.33) exceeded the fair market value of the vehicle. It offered Moran a choice—either pay $2,000 toward the repairs, or "accept . . . payment as a 'Salvage Title' in one of two ways: payment for a fixed amount and surrender the vehicle . . . or take a fixed amount . . . and keep the vehicle." He told Esurance its estimated value was too low and cost of repair too high, but the insurer refused to reconsider the matter.

Moran elected to keep the vehicle and take a payoff. He claims Esurance never advised him the vehicle would be reported to the DMV as a total loss if he chose one of the payment options, and he asserts no such notice accompanied the insurer's settlement check. Moran had the vehicle repaired for $3,539.45.

In August 2004, the DMV refused to renew Moran's registration. It notified him the vehicle had been reported as a total loss by an insurance company, so he had to apply for a salvage certificate as provided in Vehicle Code section 11515.[2]

Between September 2004 and March 2005, Moran tried to persuade the DMV the salvage certificate requirement did not apply. He first wrote the DMV to contest the total loss report, offering as evidence a predamage value of $6,490 shown in the Kelley Blue Book and repair receipts for $3,539.45. The DMV replied the total loss determination rested with the insurer. To change that, Moran had to submit an affidavit from Esurance, an arbitration or mediation decision, or a court order directing DMV to remove the salvage designation. During the same timeframe, Moran also tried to convince Esurance to change its mind (no details are offered), but it again refused.

---

[1] The facts are drawn from the allegations of the verified petition.

[2] All subsequent statutory references are to the Vehicle Code unless otherwise indicated.

The petition seeks a writ of mandate pursuant to Code of Civil Procedure section 1085. In addition to the facts set out *ante*, Moran alleges the total loss report forced him to pay additional DMV fees of approximately $207 for a salvage certificate, and a salvage title diminishes the book value of a vehicle "even if it is rebuilt as good as new." Moran avers he was denied due process when the DMV refused to afford him a hearing on the salvage designation and accepted the insurance company's report. The relief requested is a writ "ordering declaratory relief" that Moran's vehicle does not qualify as a "total loss salvage vehicle" under section 544, and directing the DMV to register the vehicle without the salvage certificate required by section 11515.

The DMV's return denied all factual allegations save that it refused to renew Moran's registration, it required an application for a salvage certificate, Moran wrote to dispute that decision, and it told Moran it would not remove the total loss designation absent a declaration from Esurance or an arbitration award. Three affirmative defenses were raised: failure to state a cause of action because the facts did not show DMV had a ministerial duty to perform the acts requested; an adequate legal remedy (a suit against Esurance for damages); and a defect of parties in failing to join Esurance.

The trial court denied the writ on the ground that requiring the DMV to hold hearings on the issue of whether a vehicle is a total loss would "impose enormous burdens," and Moran should have sued Esurance, since his real dispute was with the insurer.

A writ of ordinary mandate is available "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085, subd. (a).) "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citations]." (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].) Where the alleged ministerial duty would be contrary to law, mandate is unavailable. (See, e.g., *Barnes v. Wong* (1995) 33 Cal.App.4th 390, 395 [39 Cal.Rptr.2d 417] [mandate does not lie to compel registrar of voters to accept late ballot argument where applicable ordinance provided none could be accepted after expiration of deadline].) It must also be shown the remedy at law is inadequate. (Code Civ. Proc., § 1086; see, e.g., *Wenzler v. Municipal Court* (1965) 235 Cal.App.2d 128, 133–134 [45 Cal.Rptr. 54] [mandate does not lie to compel county to refund fine paid for violation of unconstitutional ordinance, since no showing was made civil action for refund was inadequate].)

Section 544 provides: " 'Total loss salvage vehicle' means either of the following: [¶] (a) A vehicle . . . that has been wrecked, destroyed, or

damaged, to the extent that the owner, leasing company, financial institution, or insurance company that insured or is responsible for repair of the vehicle, considers it uneconomical to repair the vehicle and because of this, the vehicle is not repaired by or for the person who owned the vehicle at the time of the event resulting in damage. [¶] (b) A vehicle that was determined to be uneconomical to repair, for which a total loss payment had been made by an insurer, whether or not the vehicle is subsequently repaired, if prior to or upon making the payment to the claimant, the insurer obtains the agreement of the claimant to the amount of the total loss settlement, and informs the client that, pursuant to subdivision (a) or (b) of Section 11515, the total loss settlement must be reported to the Department of Motor Vehicles, which will issue a salvage certificate for the vehicle."

■ Section 11515 imposes reporting and licensing requirements when there has been a total loss settlement. Subdivision (a) addresses the situation where an insurance company or its agent has possession of the vehicle. Subdivision (b) addresses the owner who keeps the vehicle: "Whenever the owner of a total loss salvage vehicle retains possession of the vehicle, the insurance company shall notify the department of the retention on a form prescribed by the department. The insurance company shall also notify the insured or owner of the insured's or owner's responsibility to comply with this subdivision. The owner shall, within 10 days from the settlement of the loss, forward the properly endorsed certificate of ownership or other evidence of ownership acceptable to the department, the license plates, and a fee in the amount of fifteen dollars ($15) to the department. The department, upon receipt of the certificate of ownership or other evidence of title, the license plates, and the fee, shall issue a salvage certificate for the vehicle."

The legal basis for Moran's claim Esurance wrongly classified his vehicle is dicta in *Martinez v. Enterprise Rent-A-Car Co.* (2004) 119 Cal.App.4th 46 [13 Cal.Rptr.3d 857]. There, an Enterprise auto suffered damage that would have cost about half of the average retail value to repair. Company policy was to sell such vehicles rather than make repairs. Enterprise sold the damaged vehicle at auction "as is" with a clean title. It was purchased by a dealer who effected repairs. The Martinezes bought the auto from the dealer, who said it had never been in an accident. The Martinezes soon discovered the truth and were told by an independent mechanic the damage could not be safely repaired. The dealer refused to rescind the sale. The Martinezes sued Enterprise and its parent company (collectively, Enterprise), along with the auctioneer, alleging the sale of the vehicle without a salvage certificate was an unfair business practice and fraud. Their theory was the vehicle was a total loss salvage vehicle because Enterprise considered it uneconomical to repair, so Enterprise was required to obtain a salvage certificate.

The court held Enterprise was not liable for violating a rule that dealers cannot sell a vehicle that fails to comply with the Vehicle Code, since there is an exception for dealer-to-dealer sales. It also opined that a salvage certificate was not required, interpreting the definition of "total loss salvage vehicle" in section 544 to require an objective determination of when a vehicle is "uneconomical to repair." The court said retail value can be obtained from "widely accepted source[s] such as the Kelley Blue Book" and cost of repair from mechanics' estimates. (*Martinez v. Enterprise Rent-A-Car Co., supra,* 119 Cal.App.4th at p. 56.) Thus, the subject auto was not a total loss salvage vehicle since it was not uneconomical to repair. A dissent pointed out the discussion of when a vehicle is a total loss salvage vehicle under section 544 was dicta.

■ In this case, mandate does not lie because the DMV does not have any ministerial duty to Moran, and there is no showing the legal remedy is inadequate. The DMV's duty, once notified that an owner has retained a total loss salvage vehicle, is to issue a salvage certificate upon receipt of the proper paperwork from the owner. (§ 11515, subd. (b).) It has no discretion to reconsider the total loss salvage vehicle determination, nor any discretion whether to require a salvage certificate instead of a regular vehicle registration. The DMV would be acting contrary to law were it to do as Moran requests and register his vehicle without a salvage certificate. Since the DMV does not have a duty to perform the act requested, and doing so would be *contrary* to law, relief cannot be granted by a writ of mandate.

Moran also fails to demonstrate legal remedies are inadequate. His real disagreement is with Esurance's decision that his vehicle was uneconomical to repair. No comprehensible reason is offered why adequate relief cannot be obtained in an action against Esurance for declaratory relief and/or damages for any diminution in value of the vehicle. For this reason as well, the petition was properly denied.

Moran argues "[i]t is self-evident that the devaluation of Moran's vehicle . . . would not remedy the scarlet letter it imposes on a vehicle that makes it very difficult, if not impossible, to sell." The proposition is not self-evident to us. Damage measured by diminution in value is a common legal remedy, and it can be established by before-and-after market values. If there is no market for Moran's vehicle with a salvage certificate, that, too, can be established. So there has been no showing the legal remedy of damages is inadequate, and this is also a bar to seeking relief by writ of mandate.

In the interests of clarity, we also pause to point out Moran is mistaken when he claims our record establishes the DMV has a "salvage title policy"

of accepting insurance company determinations on the issue of a total loss salvage vehicle. There is no evidence of this. It appears Moran feels a bad policy decision has been made in establishing the present statutory scheme, which leaves the DMV no leeway in the matter. But we are not free to correct such a mistake; that is up to the Legislature. Nor is Moran correct the DMV made a "decision" to apply the salvage certificate requirement to him. It notified Moran of the law and insisted he comply, but it had no discretion in the matter and made no adjudication particular to Moran.

Since a writ of mandate does not lie to obtain the requested declaratory relief, the judgment denying the writ must be affirmed.[3] In the interests of justice, each side shall bear its own costs on appeal.

O'Leary, J., and Ikola, J., concurred.

---

[3] In light of our conclusion mandate does not lie, we do not consider Moran's arguments that due process requires a hearing, the Legislature unconstitutionally delegated authority to insurance companies, and the DMV abused its discretion in deferring to insurance company decisions on salvage title issues.